Evan Livingstone, SBN 252008
LAW OFFICE OF EVAN LIVINGSTONE
2585 Sebastopol Rd, Unit 7265
Santa Rosa, CA 95407
Tel.: (707) 206-6570
Fax: (707) 676-9112
Email: evanmlivingstone@gmail.com

Attorney for Plaintiffs
Eduardo Escamilla and Luisa Cordero

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO ESCAMILLA AND LUISA CORDERO<br><br>Plaintiffs,<br><br>vs.<br><br>ECHELON COMMUNITIES, LLC<br><br>Defendant. | Case No. 3:23-cv-3132-LJC<br><br>**FIRST AMENDED COMPLAINT**<br><br>Housing Discrimination<br>(42 U.S.C. § 3601, et. seq)<br><br>Housing Discrimination<br>(Cal. Gov. Code §§ 12955, 12981) |

Plaintiffs EDUARDO ESCAMILLA and LUISA CORDERO bring this First Amended Complaint against Defendant ECHELON COMMUNITIES, LLC, and state as follows:

**INTRODUCTION**

1. This is an action for money damages for housing discrimination in violation of the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 et. seq., and the California Fair Employment and Housing Act, Cal. Civil Code § 12900 et. seq.

2. Plaintiffs EDUARDO ESCAMILLA and LUISA CORDERO allege that Defendant ECHELON COMMUNITIES, LLC engaged in illegal conduct under the Fair Housing Act Amendments of 1988 by discriminating against Plaintiffs on the basis of Plaintiff's physical disability, by refusing to provide a reasonable accommodation for Plaintiff Eduardo Escamilla's disability in a real estate rental transaction in regard to the mobilehome space which Plaintiffs rented from Defendant, which is located at 2963 Santa Rosa Ave, Space B-06, Santa Rosa, CA 95407 (the "Mobilehome Space").

## JURISDICTION AND VENUE

3. This court has original jurisdiction pursuant to 28 U.S.C. § 1331, and 42 U.S.C. § 3613(a), over Plaintiffs' causes of action arising under the Fair Housing Act Amendments of 1988 (FHA).

4. Plaintiffs further invoke this Court's supplemental jurisdiction, under 28 U.S.C.§ 1367, over any and all state law claims and as against all parties so related to claims in this action within this Court's original jurisdiction that they form part of the same case or controversy.

5. Venue lies in the United States District Court for the Northern District of California because, under 28 U.S.C. § 1391(b), because Defendant is headquartered in the Northern District of California, and a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in the Northern District of California.

## PARTIES

6. Plaintiff EDUARDO ESCAMILLA, now deceased, was a natural person, with a disability as defined by 42 U.S.C. § 12102 and Cal. Gov. Code § 12926(m) and Cal. Civil Code § 1761(g).

7. Plaintiff LOUISA CORDERO is a natural person.

8. Plaintiffs EDUARDO ESCAMILLA and LUISA CORDERO were legally married in the state of California in 2009.

9. Plaintiffs EDUARDO ESCAMILLA and LOUISA CORDERO were/are owners of a mobilehome located at 2963 Santa Rosa Ave, Space B-06, Santa Rosa, CA 95407.

10. Defendant ECHELON COMMUNITIES, LLC, is a California limited liability company, with headquarters in Santa Rosa, California.

11. Defendant ECHELON COMMUNITIES, LLC, is the owner and operator of Sunset Park Community, a mobilehome park located at 2963 Santa Rosa Ave, Santa Rosa, CA 95407. Defendant ECHELON COMMUNITIES, LLC is in the business of renting dwellings as defined by 42 U.S.C. §§ 3602(b) and (e), and rents or rented Space B-06 to the Plaintiffs.

## FACTUAL ALLEGATIONS

12. Plaintiff Eduardo Escamilla was diagnosed with lymphoma cancer in 2008. He

received treatment in UCSF medical center in San Francisco, including a bone marrow transplant. His treatment was successful, and by 2009 he was in remission. However he was advised that his organs could start to fail in the next few years.

13. In 2009 Eduardo Escamilla married Plaintiff Luisa Cordero.

14. In July 2012, Plaintiffs Eduardo Escamilla and Luisa Cordero purchased the mobilehome located at 2963 Santa Rosa Ave, Space B-06, Santa Rosa, CA 95407.

15. Plaintiffs placed title of the mobilehome in the name of Luisa Cordero and Plaintiffs' pastor, Thomas Cooney. However at all times the mobilehome was community property of Eduardo Escamilla and Luisa Cordero.

16. At the same time that Plaintiffs purchased their mobilehome, July 12, 2012, Eduardo Escamilla and Luisa Cordero entered into a rental agreement with Defendant Echelon Communities, LLC to rent the mobilehome space on which Plaintiffs' mobilehome is located, Space B-06 in Sunset Park Community mobilehome park.

17. Thomas Cooney was also on the rental agreement. Defendant was aware that Pastor Cooney never lived with Plaintiffs in their mobilehome.

18. Plaintiffs paid Defendant all rent and other charges due under the rental agreement, through April 2023, after which time Defendant refused to accept rent from Plaintiffs.

19. Eduardo and Luisa opened a Mexican restaurant together in 2018. Eduardo cooked for the restaurant and Luisa ran the business.

20. In May 2020, Eduardo Escamilla was hospitalized with a heart condition for approximately two weeks. Plaintiffs learned that Eduardo's heart was in a severely weakened condition.

21. In February 2021, Plaintiffs began making minor repairs on their mobilehome, which including repairing an eave, replacing the siding, and painting the mobilehome.

22. In March 2021, Defendant advised Plaintiffs that they needed to obtain a permit for the work they were doing on their mobilehome.

23. On March 12, 2021, Plaintiffs applied for and obtained a permit from the

1 | California Department of Housing and Community Development (HCD) to perform the repairs on their mobilehome.

24. On March 22, 2021, Eduardo Escamilla texted a photo of Plaintiffs' HCD permit application to Defendant's manager Giovani Sanabria, stating this is the permit from the state for space B-06, and the supervisor said to let you know that we now have the permit and can finalize the project.

25. Plaintiffs completed the repairs on their mobilehome in April 2021, with the assistance of a friend. However, in the process of replacing the siding on their mobilehome, Plaintiffs lost the original HCD decal for their mobilehome.

26. Defendant did not inform Plaintiffs that it needed anything further from Plaintiffs in regard to a permit until a year and a half later.

27. Eduardo's health continued to deteriorate. On July 5, 2021, Eduardo was hospitalized with a heart condition and kidney failure for approximately two weeks.

28. Luisa now had to juggle management of the couple's restaurant with visiting Eduardo at the hospital.

29. On July 19, 2021, Eduardo came home from the hospital. Plaintiffs were told that Eduardo's kidneys only functioned at 18% and he would soon need to start dialysis.

30. From that time on, Eduardo was not able to do his job as the chef in the restaurant. Luisa now had to do both her job and Eduardo's at the restaurant, and she also had to take care of Eduardo by herself, including clothing Eduardo at times, preparing food for him, and doing all the housework.

31. Because of Eduardo's precarious health condition and medical needs, neither Luisa nor Eduardo had the capacity to follow through with requesting the final inspection and closure of the HCD permit for the work they had done on their mobilehome.

32. Eduardo Escamilla continued to experience serious and severe medical issues. In August 2022, Eduardo was hospitalized for three weeks, with acute renal failure. Since that time he has had to go to dialysis at least three times a week, for several hours a session.

33. Luisa Cordero continued to have to care for Eduardo, run the restaurant which

First Amended Complaint

provided their livelihood, and take care of their home.

34. On November 1, 2022, more than 18 months after the work had been completed, Defendant Echelon Communities, LLC, sent Plaintiffs a letter stating, "During a recent Park Inspection it was determined that several alterations were performed on the above referenced manufactured home. Please provide copies of all documentation related to this effort including any diagrams, plans, structural and/or electrical calculations along with the associated permits and inspection cards to this office within 10 calendar days."

35. When Plaintiffs received this letter, Eduardo's health was precarious, and he had very little energy or ability to concentrate. Luisa was absorbed with caring for Eduardo, and running the restaurant to maintain their livelihood. Plaintiffs believed they had obtained the necessary permit from HCD back in March 2021.

36. On November 14, 2022, Defendant Echelon Communities, LLC, served Plaintiffs with a Seven Day Notice to Comply with Rules and Regulations which stated,

> WITHIN SEVEN DAYS after service on you of this notice, you are required to comply with the following Rule(s) and/or Regulation(s) of the Park:
> Rule 12. Item V: Building permits, licenses, and other similar permission from governmental or quasi-governmental bodies or agencies are required and must be obtained before construction or installation of certain accessory equipment, structures, and appliances and all such appliances, equipment, and structures must comply with all federal, state, and local laws and ordinances.
> Health and Safety Code Div. 13 Part 2 Chapter 8 Article 5:
> If any registration card or registration decal is stolen, lost, mutilated, or illegible, the registered owner of the manufactured home or mobile home for which it was issued, as shown by the records of the department of Housing and Community Development, shall immediately make application for, and may, upon the applicant furnishing information satisfactory to the department and paying the required fees, obtain a duplicate, substitute, or new registration under a new registration number, as determined by the department of Housing and Community Development.
> In order to comply, you must: Submit and replace any removed HUD label due to recent alterations to your home. Provide copies of all calculations and permits for any structural and electrical modifications to your home as required by law.

37. On November 15, 2022, Plaintiffs through their counsel, advised Defendant that the letter and notice were vague, that Plaintiffs had obtained a permit to replace their siding in March 2021, and that Plaintiffs would be applying for a replacement decal from HCD.

38. On November 18, 2022, Luisa Cordero sent an Application for Substitute Decal to HCD. Plaintiffs' counsel sent to Defendant's counsel a copy of the submitted Application for

1  Substitute Decal on November 21, 2022.

2    39. Defendant's counsel did not respond to Plaintiffs' counsel, and did not advise Plaintiffs' counsel that any further steps were required to be performed by Plaintiffs to comply with the November 14, 2022 Seven Day Notice.

  40. Instead on December 15, 2022, Defendant served Plaintiffs with a second Seven Day Notice to Comply with Rules and Regulations which was almost identical to the November 14, 2021 notice.

  41. On or about December 16, 2022, Eduardo Escamilla told Sunset Park Communities' manager, Giovani Sanabia, about his health issues. Eduardo explained that the permit had already been provided and a new decal had been applied for. Eduardo asked for more time to resolve Defendant's demand that Plaintiffs obtain a new decal. Eduardo sent Giovani a text message with a photo of Plaintiffs' Application for Substitute Decal, stating it he had sent it to HCD almost four weeks earlier.

  42. On February 7, 2023, Defendant Echelon Communities, LLC, served Plaintiffs with a third Seven Day Notice to Comply with Rules and Regulations which was similar to the two previous notices, except for the last paragraph which stated:

> In order to comply, you must: Replace any removed HUD label due to recent alterations to your home. Provide copies of the signed inspection cards from HCD showing all work has been inspected in order to ensure the structural and electrical work is performed in accordance with current codes and standards. Please provide copies of the final inspection card showing all work has been inspected and closed-out by HCD.

  43. The February 7, 2023 Notice to Comply was the first notice Defendant sent to Plaintiffs which made clear that Plaintiffs' permit from HCD still needed to be finalized.

  44. Because Luisa was working full time in the restaurant, Eduardo, despite his poor health, took on the task of contacting the HCD inspector, Dan Harding, to find out how to finalize their HCD permit.

  45. Because of his poor health, low energy and going to dialysis every other day, it took Eduardo longer to contact Dan that it would have taken an able-bodied person.

  46. On February 13, 2023, Eduardo texted Dan Harding a copy of Plaintiffs' March 2021 HCD permit application. Eduardo also spoke to Dan Harding around this time.

47. On February 16, 2023, Eduardo sent Giovani Sanabia a text message saying, this text is to let you know that I have now spoken to the inspector and he his going to call me next week and give me a time to inspect the trailer (mobilehome) to see if it is okay. Please let your boss know, so as not to have problems in the future.

48. Because of Eduardo's poor health, low energy, lack of sleep, semi-daily dialysis, as well as, on information and belief, HCD inspector Dan Harding's busy schedule, Eduardo and Mr. Harding did not meet to finalize Plaintiffs' HCD permit in late February or early April 2023.

49. On April 10, 2023, Defendant Echelon Communities, LLC, served Plaintiffs with a fourth Seven Day Notice to Comply with Rules and Regulations which was identical to the notice served on February 16, 2023. This was the second notice which advised Plaintiffs that they needed to get their HCD permit finalized.

50. Eduardo, despite his poor health, continued to try to finalize the HCD permit with Dan Harding. An appointment with Mr. Harding in the second week of April 2023 was cancelled.

51. On April 21, 2023, Eduardo texted Dan Harding, "Hi Mr Daniel I am Eduardo from Sunset park B-6 las[t] week the appointment was cancelled and I tex[t] you for new date please call me when you have time . . . I call you Monday morning."

52. Dan Harding responded that day, "We scheduled for Monday, your day off. Let me know if that doesn't work. The permit is very old and expired. Do you have a new one?"

53. This was the first time that Plaintiffs learned that their March 2021 permit had expired. Due to Eduardo's medical condition and Luisa's distraction with caring for Eduardo and running the restaurant that was their livelihood, they had not noticed the expiration date on the March 2021 permit. Eduardo responded to Dan Harding, "No don't have other permit."

54. On April 21, 2023, Defendant served Plaintiffs with a SIXTY (60) DAY NOTICE TO TERMINATE TENANCY, stating, "YOU ARE HEREBY NOTIFIED THAT, pursuant to the Mobilehome Residency Law (California Civil Code Section 798.56(d)), your tenancy of the Premises hereinabove described is terminated.

55. At no time were either Plaintiff or Defendant issued a Notice of Violation from

1  HCD, that required Defendant to terminate Plaintiffs' tenancy if the HCD decal and permit was
2  not obtained.
3       56.    Despite receiving the 60-Day Notice, Plaintiffs continued to work on finalizing
4  their HCD permit and getting a replacement decal from HCD.
5       57.    On April 24, 2023, Eduardo followed up with Dan Harding, "Good morning sorry
6  for call you at this time. I finish my dialysis at 9:45. Please let me know what time works for
7  you. I cancelled all my Dr. appointments for today. I call you at 9:00 am please keep me on your
8  schedule for today." Eduardo followed up later that morning with a text to Dan Harding that said,
9  "Hi Inspector I call you at 11:00 am, just checking what time you are in sunset. Thanks for your
10 time."
11      58.    Eduardo met with Dan Harding on April 24, 2023. Mr. Harding informed
12 Eduardo that he and Luisa would need to fill out a new permit application and submit it to HCD,
13 along with the appropriate fee. Plaintiffs filled out the form that day, Luisa signed it, and
14 Eduardo made arrangement with a friend to drive him to Sacramento to hand deliver the permit
15 application to HCD.
16      59.    On April 25, 2023, not having received a response from HCD about the
17 Application for Substitute Decal which Plaintiffs had sent to HCD on December 18, 2022, Luisa
18 filled out and sent another Application for Substitute Decal. This second application was
19 received and stamped by HCD on May 4, 2023. However HCD responded by writing Luisa, and
20 telling her that HCD no longer provided replacement decals for mobilehomes, but that she could
21 request an equivalent document from a third-party contractor to HCD called the Institute for
22 Building Technology and Safety (IBTS). Luisa immediately ordered this document from IBTS.
23      60.    On or about May 9, 2023, HCD issued a new permit for the modifications which
24 Plaintiffs had completed in 2021.
25      61.    On May 12, 2023, Eduardo Escamilla and Luisa Cordero submitted a request for a
26 reasonable accommodation, through their counsel, asking Echelon Communities LLC to rescind
27 the 60 Day Notice to Vacate and to give Plaintiffs more time to obtain the HCD permit, as a
28 reasonable accommodation for Eduardo's disability. Plaintiffs' counsel attached a letter from one

First Amended Complaint

of Eduardo's medical provider, Susan Mischke, NP, which stated:

> Eduardo Escamilla has a chronic medical condition which has made it more difficult for resolve the issues with his mobile home. If he has to move his health will be negatively affected. He requires extra time to resolve any outstanding issues with his mobile home as a reasonable accommodation for his disability.

62. Plaintiffs' counsel attached the new open, but not yet finalized, HCD permit Plaintiffs had obtained on May 9, 2023, to Plaintiffs' request for reasonable accommodation.

63. On May 17, 2023, Eduardo texted Dan Harding, "Good morning Inspector, I am Eduardo and this message is to let you know that today I have the day off. You said the appointment is at around one in the afternoon but I am available until three in the afternoon."

64. HCD Inspector Dan Harding came to Plaintiffs' home, performed the inspection and signed off on the permit on May 17, 2023.

65. On May 23, 2023, Defendant Echelon Communities, LLC responded through its lawyer that it would not consider rescinding Plaintiffs' 60-day notice, but intended to continue to evict Plaintiffs, regardless of Eduardo Escamilla's disability. Echelon Communities, LLC's only offer was to give Plaintiffs more time to vacate.

66. On May 23, 2023, Plaintiffs provided Defendant their finalized HCD permit for the work done on their mobilehome, signed off by HCD inspector Harding on May 17, 2023.

67. On June 2, 2023, Plaintiffs' counsel again sent Defendant's counsel a request for reasonable accommodation on Plaintiff's' behalf, providing more detailed information about Eduardo's debilitating medical condition and the nexus between his disability and his need for a reasonable accommodation. The letter stated in part:

> [I]n response to your client's request for additional information to show the nexus between Mr. Escamilla's disability and the accommodation request, Mr. Escamilla has a serious heart condition and kidney disease. He was hospitalized for about six weeks last year and has had to go to dialysis 3 to 4 times a week since then. Because of these medical needs, he and Ms. Cordero have been dealing with Eduardo's medical condition and have needed more time to resolve the permit. Mr. Escamilla tells me he informed the office manager of this, which can be construed as a previous request for a reasonable accommodation which your client has ignored.
>
> The permit issue was resolved as of May 17, 2023. Mr. Escamilla and Ms. Cordero needed more time to resolve the permit so Mr. Escamilla can stay in his home. Thus rescinding the 60 day notice is an accommodation that is necessary to afford Mr. Escamilla equal opportunity to use and enjoy a dwelling or housing opportunity as someone who is not disabled.

First Amended Complaint

68. On or around June 7, 2023, Luisa received the HCD authorized, third-party replacement for the mobilehome decal, called a Manufactured Home Performance Verification Certificate from IBTS. Luisa immediately provided a copy of this document to Defendant.

69. On June 15, 2023, Plaintiffs spoke with Defendant's owner, John Preston, in person, and made another oral and written request for a reasonable accommodation to allow them to stay in their home, due to Eduardo's disability. Plaintiffs stated orally and in writing that Eduardo has been in communication with Defendant's manager Giovani Sanabia about the permit and decal for their mobilehome. They explained that Eduardo had a kidney and heart condition and as a result, Eduardo and Luisa had not been able to focus on anything more than Eduardo's health. Eduardo was in dialysis three, and sometimes four times a week. They explained that because of the changes in Eduardo's health, they were unable to give Mr. Preston what he had asked for earlier. Plaintiffs explain that the permit was now signed by the inspector and they had provided Echelon Communities with the signed permit, and that the decal had arrived and they also had it. Plaintiffs asked Mr. Preston to allow them to keep living in the park, stating that they had always paid the rent, it was the only home that they had, that Eduardo's health was not good, that they were thinking about being evicted all the time, that Eduardo was suffering from a tremendous anxiety and the anxiety was damaging to Eduardo's heart. Eduardo and Luisa asked Mr. Preston for mercy, reiterated they were very responsible when it came to paying the rent, and they needed their home to live, stating that Defendant was taking away the home from someone who needed it because Eduardo was a cancer survivor, whose kidneys and heart were very deteriorated.

70. Mr. Preston refused to rescind Plaintiffs' 60-Day Notice To Vacate, and refused to engage in an interactive process as to whether Plaintiffs' request for accommodation was necessary and could reasonably be granted by Defendant.

71. Plaintiffs Eduardo Escamilla and Luisa Cordero returned to their home in a high state of anxiety. Eduardo had trouble sleeping because he was constantly worried about being evicted from his home. Luisa had to attend to Eduardo at night because he was unable to sleep, and also continue to run the restaurant during the day to provide for Eduardo and herself.

First Amended Complaint

72. Eduardo's health continued to decline, exacerbated by the severe emotional distress and anxiety he experienced due to Defendant terminating Plaintiffs' tenancy, refusing to rescind the notice of termination, refusing to accept their rent payments, and threatening to evict Plaintiffs from their home.

73. Luisa also suffered great emotional distress and anxiety as result of the threat of eviction, as well as the damaging effect that threat was having on the health of her husband.

74. On November 3, 2023, Eduardo Escamilla suffered a complete cardiac arrest and died.

75. Luisa Escamilla continues suffer great emotional distress as a result of the death of her husband, the torment he experienced in his last days as a result of Defendant's refusal to rescind the eviction notice, as well as her ongoing concern about losing her home.

76. If Luisa is evicted from the space in Defendant's park where her mobilehome is located, she will be unable to move it to another location due to the age of her mobilehome, the cost involved, and the lack of available spaces to place mobilehomes in the area.

77. As a result of Defendant's conduct, Plaintiffs have suffered, and Luisa continues to suffer, general emotional distress damages in an amount of at least $1,000,000.

78. If Luisa is evicted from the space her mobilehome occupies in Defendant's park, she will suffer special economic damages of at least $250,000 due to the loss of her mobilehome.

**CLAIMS FOR RELIEF**

**COUNT I**

Housing Discrimination – Fair Housing Amendments Act of 1988 (42 U.S.C. § 3601, et. seq.)

79. Plaintiffs hereby incorporate all the foregoing allegations as though fully set forth herein.

80. Plaintiff Eduardo Escamilla had a handicap, that is a physical impairment which substantially limited one or more of his major life activities, as defined by 42. U.S.C. § 3602(h)(1).

81. Defendant rents or rented a dwelling to Plaintiffs, as defined by 42. U.S.C. §§

3602(b), (e), because the mobilehome space which Plaintiffs rent or rented from Defendant is vacant land which is offered for lease for the location thereon of a structure designed for human occupancy as a residence for a family.

82.     The Fair Housing Amendments Act of 1988 (FHA), 42 U.S.C. § 3604(f) provides that it is unlawful to discriminate in the rental, or to otherwise make unavailable or deny, a dwelling to any renter because of a handicap of that renter, a person residing in that dwelling after it is rented, or any person associated with that or renter.

83.     42 U.S.C. § 3604(f)(3)(B) provides that illegal housing discrimination includes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

84.     Plaintiffs could not obtain the permit in the timeframe demanded by Defendant, because Mr. Escamilla's disability made it much more difficult for Plaintiffs take the required steps to obtain a new permit and get that permit approved within the timeframe demanded by Defendant. Therefore because of Mr. Escamilla's disability, it was necessary that Defendant rescind Plaintiffs' 60-Day Notice to Terminate their tenancy, in order for Plaintiffs to be able to enjoy their mobilehome space in the same way as non-disabled residents of the park.

85.     In refusing to give Plaintiffs more time to obtain a finalized permit and decal from HCD, and refusing to rescind Plaintiffs' 60-Day Notice to Vacate, despite the fact that Plaintiff Eduardo Escamilla has a disability and handicap which made it more difficult for Plaintiffs to obtain these documents, Defendant has engaged in a discriminatory housing practice in violation of the Fair Housing Amendments Act of 1988, 42. U.S.C. § 3602(f) against both Plaintiffs.

86.     As a result of Defendant's violation of the Fair Housing Amendments Act of 1988, Plaintiffs have suffered general emotional distress damages in an amount of at least $1,000,000, and Luisa will suffer special economic damages of at least $250,000.

87.     In denying Plaintiffs' request for a reasonable accommodation, Defendant exhibited a reckless or callous disregard of, or indifference to, Plaintiffs' rights.

**COUNT II**

Housing Discrimination (Cal. Gov. Code §§ 12955, 12989.1)

88. Plaintiffs hereby incorporate all the foregoing allegations as though fully set forth herein.

89. Gov Code, § 12955(a) provides that it shall be unlawful for the owner of any housing accommodation to discriminate against any person because of their disability.

90. Plaintiff Eduardo Escamilla has a physical disability as defined in Gov Code, § 12926(m).

91. 2 Cal Code Regs § 12176(a) provides that a reasonable accommodation is an exception, change, or adjustment in rules, policies, practices, or services when such an accommodation may be necessary to afford an individual with a disability an equal opportunity to use and enjoy a dwelling unit and public and common use areas.

92. 2 Cal Code Regs § 12176(c) provides that it is a discriminatory housing practice for any person to refuse to make reasonable accommodations unless providing the requested accommodation would constitute an undue financial and administrative burden or a fundamental alteration of its program, or if allowing an accommodation would constitute a direct threat to the health and safety of others, or would cause substantial physical damage to the property of others.

93. 2 Cal Code Regs § 12177 provides that whenever a person who receives a request for a reasonable accommodation cannot immediately grant the requested accommodation , the person considering the request must engage in an interactive process with the individual with a disability or the individual's representative. An undue delay by the person considering the request, may constitute a denial of a reasonable accommodation.

94. Defendants failed to engage in an interactive process and refused to make a reasonable accommodation for Plaintiff's disability without justification after Plaintiffs made a reasonable accommodation request for more time to obtain a finalized permit and decal from HCD, and by refusing to rescind Plaintiffs' 60-Day Notice to Vacate.

95. Gov Code § 12989.1 provides that an aggrieved person may commence a civil action in an appropriate court not later than two years after the occurrence or the termination of

First Amended Complaint

an alleged discriminatory housing practice.

96. Gov Code § 12989.2 provides that in a civil action brought under Section 12989.1, if the court finds that a discriminatory housing practice has occurred the court may award the plaintiff actual and punitive damages, reasonable attorney's fees, and costs.

97. As a result of Defendant's failure to engage in an interactive process and denial of request for reasonable accommodation, Plaintiffs suffered general damages in the form of emotional distress in an amount to be proved at trial but not less than $1,000,000, and will suffer special economic damages in an amount to be proved at trial, but not less than $250,000.

98. In addition, Defendant knew that Plaintiff Eduardo Escamilla was a disabled person.

99. Defendant's conduct caused Plaintiff Eduardo Escamilla to suffer loss of his primary residence.

100. Eduardo Escamilla was substantially more vulnerable than other members of the public to Defendant's conduct because of his disability.

101. Eduardo Escamilla suffered substantial emotional and economic damage resulting from Defendant's conduct. Therefore, Plaintiff Eduardo Escamilla is entitled to recover triple penalties pursuant to Cal Civil Code § 3345.

102. Defendant acted with malice, fraud and or oppression when doing the acts alleged herein. Therefore, Plaintiffs are entitled to recover punitive damages pursuant to Cal Civil Code § 3294.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a jury trial, pursuant to the Seventh Amendment to the Constitution of the United States, as to all claims for damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendant for the following:

1. Actual damages of $1,250,000, as authorized by 42 U.S.C. § 3613(c)(1), Gov Code § 12989.2, consisting of special economic damages of $250,000, and general emotional

      distress damages of $1,000,000;

2. Punitive damages as authorized by 42 U.S.C. § 3613(c)(1), and Gov Code § 12989.2;

3. For treble penalties pursuant to Cal Civ Code § 3345;

4. For exemplary damages pursuant to Cal. Gov Code § 3294,

5. For reasonable attorneys' fees pursuant to 42 U.S.C. § 3613(c)(2), Cal. Gov Code § 12989.2, and Cal. Civ. Code § 1717;

6. For costs of suit;

7. For such other and further relief as the Court deems just and proper.

Dated: December 25, 2023                   Law Office of Evan Livingstone

/s/Evan Livingstone
Evan Livingstone
Attorney for Plaintiffs
Eduardo Escamilla and Luisa Cordero