UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO ESCAMILLA, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>ECHELON COMMUNITIES, LLC,<br><br>   Defendant. | Case No. 23-cv-03132-LJC<br><br>**ORDER REGARDING MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO SUBSTITUTE PLAINTIFF**<br><br>Re: Dkt. Nos. 32, 37 |

## I.  INTRODUCTION

Plaintiffs Eduardo Escamilla and Luisa Cordero allege that Defendant Echelon Communities, LLC (Echelon) failed to accommodate Escamilla's disability by seeking to terminate Plaintiffs' tenancy at a mobilehome[1] park for failure to obtain a necessary permit and refusing to rescind a notice to vacate issued on April 21, 2023. The Court previously granted a motion by Echelon to dismiss Plaintiffs' original Complaint. Plaintiffs thereafter filed their operative First Amended Complaint. Echelon now moves once again to dismiss, and Cordero moves to substitute herself as successor in interest to her husband Escamilla, who died while this case has been pending.

The Court held a hearing on Echelon's Motion to Dismiss on February 27, 2024. The Court finds Plaintiffs' Motion to Substitute suitable for resolution without oral argument and VACATES the hearing noticed for March 19, 2024 pursuant to Civil Local Rule 7-1(b). For the reasons discussed below, Plaintiffs' Motion to Substitute is GRANTED, and Echelon's Motion to Dismiss is DENIED.[2]

---

[1] This order follows the convention of California law in using the single word "mobilehome". *See, e.g.*, Cal. Health & Safety Code § 18008 (defining the term).
[2] All parties have consented to the jurisdiction of a magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Procedural History and Previous Order

Plaintiffs brought this action on June 25, 2023 asserting claims for failure to accommodate disability in violation of the federal Fair Housing Amendments Act of 1988 (FHAA, 42 U.S.C. § 3601, et seq.), failure to accommodate disability in violation of California's Fair Employment and Housing Act (FEHA, Cal. Gov't Code § 12955), and retaliatory eviction in violation of California Civil Code section 1942.5 and California common law. ECF No. 1 (Compl.) at 6–11.

The Court granted Echelon's first motion to dismiss on December 4, 2023. ECF No. 30.[3] With respect to Plaintiffs' FHAA claim, the Court held that the Complaint did not sufficiently allege that an accommodation was necessary because Plaintiffs had not offered allegations describing the process to obtain the permit at issue, how Escamilla's disability prevented him from doing so, or what role Cordero played in either obtaining the permit or caring for Escamilla. *Id.* at 5–7. The Court dismissed Plaintiffs' FEHA claim for the same reasons, and granted Plaintiffs leave to amend those claims. *Id.* at 7, 10, 11. The Court held that Plaintiffs sufficiently alleged other elements of those claims, including that Echelon denied a requested accommodation by repeatedly issuing seven-day notices to comply and refusing to rescind the sixty-day notice to vacate, and that rescission of the sixty-day notice might be a reasonable accommodation. *Id.* at 7–8. The Court also held that both Plaintiffs had standing to bring their FHAA claim. *Id.* at 8–9. The Court dismissed Plaintiffs' retaliatory eviction claim because Plaintiffs abandoned that claim by failing to address it in their opposition brief. *Id.* at 10–11.

Plaintiffs filed their operative First Amended Complaint on December 25, 2023, bringing only FHAA and FEHA claims. ECF No. 31 (FAC). Echelon filed its present Motion to Dismiss on January 8, 2024. ECF No. 32.

While this case was pending, Escamilla died due to cardiac arrest on November 3, 2023. ECF No. 31 at 11, ¶ 74. The Court's previous order set a deadline of February 7, 2024 for

---

[3] *Escamilla v. Echelon Communities, LLC*, No. 23-cv-03132-LJC, 2023 WL 8420947 (N.D. Cal. Dec. 4, 2023). Citations herein to the Court's previous order, as well as to other filings in this case, refer to page numbers assigned by Court's ECF filing system.

Cordero to move to substitute herself as Escamilla's successor in interest, reflecting the deadline imposed by Rule 25(a)(1) of the Federal Rules of Civil Procedure. ECF No. 30 at 1 n.1. Cordero so moved on that deadline, and Echelon does not oppose that motion. ECF Nos. 37, 38.

### B. Allegations for the First Amended Complaint

Because Plaintiffs' factual allegations are generally taken as true in resolving a motion to dismiss under Rule 12(b)(6), this section summarizes Plaintiffs' allegations as if true. Nothing in this order should be construed as resolving any issue of fact that might be disputed at a later stage of the case.

Plaintiffs married in 2009. ECF No. 31 at 3, ¶ 13. They purchased a mobilehome in 2012 and entered a rental agreement with Echelon for the space where the mobilehome is located in Santa Rosa. *Id.* at 3, ¶¶ 14, 16. For reasons not addressed in the First Amended Complaint, "Plaintiffs placed title of the mobilehome in the name of Luisa Cordero and Plaintiffs' pastor, Thomas Cooney," and Cooney was on the rental agreement along with Plaintiffs. *Id* at 3, ¶¶ 15, 17. Plaintiffs assert, however, that they owned the mobilehome as community property, and that Echelon knew that Cooney never lived at the mobilehome. *Id.*

Plaintiffs opened a restaurant in 2018, with Escamilla cooking and Cordero running the business. *Id.* at 3, ¶ 19.

In February 2021, Plaintiffs started making repairs to their mobilehome. *Id.* at 3, ¶ 21. Echelon told them the next month that they needed to obtain a permit, and Plaintiffs "applied for and obtained" the necessary permit from the California Department of Housing and Community Development (HCD) on March 12, 2021. *Id.* at 3–4, ¶¶ 22–23. Plaintiffs sent Echelon a copy of the permit application and completed the project in April 2021, but lost a decal issued by HCD during the project. *Id.* at 4, ¶¶ 24–25.

Escamilla's health worsened during this time. He had been treated for lymphoma in 2008 and 2009, and although that treatment succeeded in putting his cancer in remission, he was advised that his organs might later fail. *Id.* at 2–3, ¶ 12. Escamilla was hospitalized for a heart condition in May of 2020 and learned that his "heart was in a severely weakened condition." *Id.* at 3, ¶ 20. In July of 2021, after Plaintiffs completed there mobilehome repairs, Escamilla "was

3

1   hospitalized with a heart condition and kidney failure for approximately two weeks." *Id.* at 4,

2   ¶ 27.  When he was released, he was told that his kidneys functioned at eighteen percent capacity

3   and he would soon need dialysis.  *Id.* at 4, ¶ 29.

4         Escamilla could no longer work or fully care for himself after that hospitalization.  *Id.* at 4,

5   ¶ 30.  Cordero took over Escamilla's job in addition to her own at the restaurant and also cared for

6   Escamilla at home, including clothing and feeding Escamilla and doing all necessary housework.

7   *Id.*  Neither Cordero nor Escamilla "had the capacity to follow through with requesting the final

8   inspection and closure of the HCD permit for the work they had done on their mobilehome" earlier

9   that year.  *Id.* at 4, ¶ 31.

10         Escamilla was hospitalized again for three weeks in August of 2022 with acute renal

11   failure, and afterwards needed dialysis at least three times each week, with each session lasting

12   several hours.  *Id.* at 4, ¶ 32.  Cordero continued to care for Escamilla and run the restaurant on her

13   own.  *Id.* at 4–5, ¶ 33.

14         On November 1, 2022, Echelon sent Plaintiffs a letter requesting copies of "all

15   documentation" and "the associated permits and inspection cards" for the 2021 work on the

16   mobilehome within ten days.  *Id.* at 5, ¶ 34.  Plaintiffs were stretched thin with Escamilla's

17   precarious health and believed they had already obtained the necessary permit.  *Id.* at 5, ¶ 35.  On

18   November 14, 2022, Echelon sent Plaintiffs the first of several seven-day notices to comply with

19   rules of the mobilehome park and provisions of the California Health and Safety Code requiring

20   mobilehomes to display registration decals.  *Id.* at 5, ¶ 36.  The next day, Plaintiffs' counsel told

21   Echelon that Plaintiffs had obtained the permit in 2021 and would apply for a replacement decal.

22   *Id.* at 5, ¶ 37.  Cordero submitted an application for a replacement decal on November 18, 2022.

23   *Id.* at 5–6, ¶ 38.

24         On December 15, 2022, Echelon sent Plaintiffs a second, nearly identical seven-day notice.

25   *Id.* at 6, ¶ 40.  Escamilla promptly told Echelon's manager about his health issues and that

26   Plaintiffs had applied for a replacement decal, and asked for more time to resolve the issue.  *Id.* at

27   6, ¶ 41.

28         On February 7, 2023, Echelon served Plaintiffs with a third seven-day notice, indicating

1    for the first time that Plaintiffs needed to have the work they completed in 2021 inspected and
2    finalized by HCD. *Id.* at 6, ¶¶ 42–43.  Escamilla attempted to bring Plaintiffs into compliance by
3    contacting the HCD inspector, because Cordero was unavailable due to her work. *Id.* ¶ 44.
4    Escamilla spoke to the inspector on February 13, 2023, and told Echelon a few days later that he
5    had done so and was working to schedule an inspection. *Id.* at 6–7, ¶ 46–47.  Due in part to
6    Escamilla's poor health, low energy, and every-other-day dialysis schedule, it took him longer to
7    connect with the inspector and schedule an inspection than it would have taken an able-bodied
8    person. *Id.* at 6, 7, ¶¶ 45, 48.  Echelon served Plaintiffs with another seven-day notice on April 10,
9    2023, which was nearly identical to the February notice. *Id.* at 7, ¶ 49.
10        After an inspection appointment in mid-April 2023 was canceled, the inspector noted to
11   Escamilla on April 21, 2023 that Plaintiffs' permit was "very old and expired," and asked if
12   Plaintiffs had a new permit. *Id.* at 7, ¶¶ 50–52.  This was the first time Plaintiffs learned that the
13   March 2021 permit had expired. *Id.* at 7, ¶ 53.  Escamilla responded that they did not. *Id.*  Also
14   on April 21, 2023, Echelon served Plaintiffs with a sixty-day notice to vacate, which stated that
15   Plaintiffs' tenancy had been terminated. *Id.* at 7, ¶ 54.
16        Escamilla met with the inspector on April 24, 2023, having canceled his doctors'
17   appointments for the day. *Id.* at 8, ¶¶ 57–58.  The inspector told him that Plaintiffs would need to
18   submit a new application. *Id.* at 8, ¶ 58.  Plaintiffs completed the forms the same day, and
19   Escamilla arranged for a friend to drive him to Sacramento to hand-deliver the application to
20   HCD. *Id.*  HCD issued a new permit for the March 2021 repairs on May 9, 2023. *Id.* at 8, ¶ 60.
21        Through counsel, Plaintiffs requested on May 12, 2023 that Echelon rescind the notice to
22   vacate as an accommodation to allow Plaintiffs more time to finalize the new permit, attaching the
23   newly-issued-but-not-yet-finalized permits and a note from Escamilla's nurse practitioner stating
24   that his medical condition had made it more difficult to resolve the issue and that his health would
25   be impaired if he was evicted and had to move. *Id.* at 8–9, ¶¶ 61–62.
26        The inspector performed the inspection and finalized the permit on May 17, 2023. *Id.* at 9,
27   ¶¶ 63–64.  On May 23, 2023, Echelon stated that it would not consider rescinding the notice to
28   vacate. *Id.* at 9, ¶ 65.  The same day, Plaintiffs provided Echelon with the finalized permit, signed

1     by the inspector. *Id.* at 9, ¶ 66. Plaintiffs' counsel sent Echelon another letter on June 2, 2023,

2     again explaining Escamilla's poor health and requesting that Echelon rescind the sixty-day notice

3     as a reasonable accommodation. *Id.* at 9, ¶ 67.

4           In the meantime, Plaintiffs also resubmitted their request for a new registration decal on

5     April 25, 2023 (having received no response to the application they submitted in November), and

6     HCD informed them that they needed to send that request to a third-party contractor, so they

7     ordered the decal from the contractor. *Id.* at 8, ¶ 59. They ultimately received the new decal on

8     June 7, 2023 and immediately provided a copy to Echelon. *Id.* at 10, ¶ 68.

9           On June 15, 2023, Plaintiffs asked Echelon's owner to allow them to continue living in the

10    mobilehome park. *Id.* at 10, ¶ 69. They explained their difficulties due to Escamilla's health and

11    that they had resolved all issues related to the permit and decal. *Id.* Echelon's owner refused to

12    rescind the notice to vacate or to engage in an interactive process regarding that request. *Id.* at 10,

13    ¶ 70.

14           Escamilla died of cardiac arrest on November 3, 2023. *Id.* at 11, ¶ 74. According to

15    Plaintiffs, the stress from Echelon's efforts to evict Plaintiffs contributed to Escamilla's declining

16    health. *Id.* at 11, ¶ 72. Due to factors including the age of the mobilehome and the lack of other

17    available spaces in the area, Cordero would not be able to move her mobilehome to another

18    location if she is evicted from Echelon's park. *Id.* at 11, ¶ 76.

19          **C.**      **The Parties' Arguments Regarding Echelon's Motion to Dismiss**

20          Echelon argues that Plaintiffs have not alleged a sufficient request for accommodation

21    under the FHAA because they did not "communicate[] to the Park that they could not comply

22    *because* of Mr. Escamilla's health issues and, more specifically, that Ms. Cordero could not

23    comply because she had to spend time caring for him." ECF No. 32 (Mot. to Dismiss) at 11.

24    Plaintiffs contend that they have sufficiently alleged that Escamilla told Echelon about his

25    disability when requesting an extension of time in December of 2022, and that Plaintiffs' counsel

26    repeatedly requested rescission of the notice to vacate based on Escamilla's disability and its

27    impact on Cordero. ECF No. 35 (Opp'n) at 9. Echelon argues in its Reply that Escamilla's

28    December 2022 request was not sufficiently specific. ECF No. 36 (Reply) at 5. Echelon appears

1   to concede that Plaintiffs' May and June 2023 requests were sufficiently clear, arguing instead that

2   rescission of the notice to vacate was unreasonable, as discussed below. *Id.* at 5–7.

3        Echelon also contends that Plaintiffs have not alleged that Escamilla's disability prevented him (or Cordero) from obtaining a permit and a replacement decal in the roughly six-month period between Echelon's first letter and the sixty-day notice to vacate, and that Plaintiffs' allegations on the subject are too vague and conclusory to credit. ECF No. 32 at 12–13; ECF No. 36 at 7–8. Echelon argues that Escamilla did not have standing to request a replacement registration decal because he was not a registered owner, and that nothing prevented Cordero or Plaintiffs' pastor from resolving that issue. ECF No. 32 at 13. Plaintiffs argue that they have sufficiently alleged that Escamilla's disability and related medical treatment delayed both Escamilla and Cordero's efforts to finalize the permit and replace the decal. ECF No. 35 at 13–14.

        Echelon argues that the accommodations Plaintiffs requested were not reasonable, because Plaintiffs' noncompliance with state law regarding permits and registration decals jeopardized Echelon's license to operate a mobilehome park, and because Echelon allowed Plaintiffs several months to come into compliance. ECF No. 32 at 14–15. Plaintiffs argue that an extension would have been reasonable because Echelon was not cited for any violation and was under no pending deadline from the State to terminate Plaintiffs' tenancy. ECF No. 34 at 11. They also contend that rescission of the notice to vacate was reasonable after they finalized their permit and obtained a replacement decal, and that Echelon has an ongoing duty to consider successive requests for accommodation at any time before Plaintiffs are actually evicted from the property. *Id.* at 11, 14–15. Plaintiffs note that the Ninth Circuit has held that an extension of time to comply with the law can be a reasonable accommodation required by the FHAA. *Id.* at 16–17 (citing *McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004)). Echelon argues in its Reply that rescission of the notice to vacate was unreasonable under the circumstances of this case because Echelon previously allowed Plaintiffs additional time to comply, and that Echelon could have faced legal consequences for Plaintiffs' noncompliance at any time, even though it had not received a notice of violation from the State. ECF No. 36 at 6–7, 8–10.

        Echelon contends that Plaintiffs' FEHA claim fails for the same substantive reasons as the

1  FHAA claim, and that the Court should decline supplemental jurisdiction over the FEHA claim if
2  the Court dismisses the FHAA claim. ECF No. 32 at 15–16. Echelon also argues that even if the
3  FHAA claim survives, the Court should decline to exercise supplemental jurisdiction over the
4  FEHA claim because issues of state law predominate. *Id.* Plaintiffs argue that their FEHA claim
5  rises and falls with their FHAA claim, and that the Court should not decline supplemental
6  jurisdiction. ECF No. 35 at 17–18.

7  Echelon briefly argues that Escamilla is not a proper party due to his death and that no
8  successor in interest has been appointed. ECF No. 32 at 10; ECF No. 36 at 3. In light of
9  Echelon's non-opposition to Cordero's subsequent motion to substitute herself as Escamilla's
10 successor in interest, the Court understands that Echelon has withdrawn this argument for
11 dismissal.

## III. ANALYSIS

### A. Motion to Substitute

Rule 25(a) of the Federal Rules of Civil Procedure allows a court to order substitution of a "successor or representative" if a party dies while a case is pending. Fed. R. Civ. P. 25(a)(1). A court may appoint a "successor" even if no representative has been appointed through probate. *Rivington Partners, LLC v. Rovens*, No. 21-cv-06151-LB, 2022 WL 2391003, at *3 (N.D. Cal. July 1, 2022) (citing, *e.g.*, Moore's Federal Practice – Civil § 25.12[3] (2022)). "In evaluating a Rule 25(a)(1) motion, the Court must consider whether: (1) the motion is timely; (2) the claims pled are extinguished; and (3) the person being substituted is the proper party." *Martinez v. Animal Health Int'l, Inc.*, No. 1:21-CV-00965-JLT-SKO, 2022 WL 2791171, at *1 (E.D. Cal. July 15, 2022).

A motion under Rule 25(a) must be "made within 90 days after service of a statement noting the death." Fed. R. Civ. P. 25(a)(1). Cordero filed a suggestion of Escamilla's death on November 9, 2023, exactly ninety days before she filed her Motion to Substitute. ECF Nos. 29, 37. The Motion to Substitute is therefore timely.

Claims under California law survive a plaintiff's death except as otherwise provided by statute. Cal. Civ. Proc. Code § 377.20(a). There is no exception applicable to FEHA claims. *See*

United States District Court
Northern District of California

*Martinez*, 2022 WL 2791171, at *1; *Li Ching Chu v. Tribal Techs., Inc.*, No. C 11-04990 WHA, 2013 WL 12130030, at *2 (N.D. Cal. Jan. 25, 2013), *aff'd*, 576 F. App'x 668 (9th Cir. 2014). Escamilla's FEHA claim therefore survives his death.

Cordero's motion does not address the standard for Escamilla's federal claim under the FHAA. "[U]nder federal common law, federal claims typically survive a decedent's death if they are remedial in nature and not penal." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1056–57 (9th Cir. 2018). Housing discrimination claims are remedial in nature and therefore survive a plaintiff's death. *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 110 (3d Cir. 2017); *see also*, *e.g.*, *Est. of Stoick ex rel. Spry v. McCorvey*, No. CIV. 10-1030 DSD/AJB, 2011 WL 3419939, at *3 (D. Minn. July 29, 2011) ("A claim for compensatory damages under the FHAA also survives the death of the plaintiff."); *Ambruster v. Monument 3: Realty Fund VIII Ltd.*, 963 F. Supp. 862, 866 (N.D. Cal. 1997). Accordingly, Escamilla's FHAA claim is not extinguished by his death.[4]

The next question is whether Cordero is the appropriate successor. Escamilla died intestate, survived by his wife Cordero, his sister, his brother, and his father. ECF No. 37-1 (Cordero Decl.). A legal claim that arose during marriage is community property under California law. *Allen v. County of Lake*, No. 14-cv-03934-TEH, 2017 WL 10810336, at *2–3 (N.D. Cal. May 26, 2017); *Feliz v. County of Orange*, No. SACV 10-1664-CJC(MLGx), 2012 WL 12887770, at *3 (C.D. Cal. Mar. 13, 2012). A plaintiff's spouse automatically inherits half of the claim corresponding the surviving spouse's interest in the community property, and inherits the remaining half if the plaintiff dies intestate, regardless of whether other relatives also survive the plaintiff. *See* Cal. Prob. Code §§ 100(a), 6401(a). The surviving spouse is therefore the appropriate successor in interest for such claims. *Allen*, 2017 WL 10810336, at *2–3; *Feliz*, 2012 WL 12887770, at *3. Here, that is Cordero.

---

[4] The parties have not addressed whether particular categories of damages survive Escamilla's death, and this order does not reach that question. *See, e.g.*, *Wheeler*, 894 F.3d at 1056–57 (suggesting that a successor in interest cannot pursue punitive damages for a decedent's federal claims); Cal. Civ. Proc. Code § 377.34(a)–(b) (barring recovery of emotional distress damages on behalf of a decedent under state law in most cases, but providing an exception for cases filed between January 1, 2022 and January 1, 2026).

Cordero's motion to substitute as successor in interest for Escamilla is therefore GRANTED. In the interest of efficiency, Cordero need not file a second amended complaint, and the Court deems the current First Amended Complaint to be brought by Cordero in her individual capacity and as successor in interest to Escamilla.

### B. Legal Standard for Motion to Dismiss

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation and internal quotation marks omitted). A complaint generally must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A court reviewing a 12(b)(6) motion must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). "Threadbare recitals of the elements of a cause of action . . . do not suffice," however, and a court need not credit "legal conclusions" or "mere conclusory statements." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must demonstrate "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court's review is generally limited to the contents of a complaint, with the exception of materials incorporated by reference in a complaint or materials subject to judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

A court generally should not dismiss a complaint with prejudice under Rule 12(b)(6) unless it is clear the complaint cannot be saved by any amendment. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "[L]eave to amend should be freely granted 'when justice so requires.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Fed. R. Civ. P. 15(a)). Generally, leave to amend may be denied only if allowing the amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party

10

has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### C.   Plaintiffs' FHAA Claim

The FHAA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of a handicap of . . . that person; or . . . any person associated with that person."  42 U.S.C. § 3604(f)(2).  Plaintiffs bring a claim under 42 U.S.C. § 3604(f)(3)(B), which proscribes the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  Whether an accommodation is reasonable is "'highly fact-specific, requiring case-by-case determination.'"  *Birdwell v. AvalonBay Communities, Inc.*, No. 21-cv-00864-JST, 2023 WL 6307894, at *8 (N.D. Cal. Sept. 27, 2023) (quoting *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1381 (9th Cir. 1997)); *see also Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1190 (9th Cir. 2021).

A plaintiff asserting such a claim must allege five elements: "(1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation . . . of the handicap is necessary to afford the handicapped person an equal opportunity [i.e., equal to a non-handicapped person] to use and enjoy the dwelling; (4) that the accommodation . . . is reasonable; and (5) that defendant refused to make the requested accommodation."  *Howard*, 988 F.3d at 1189–90 (brackets in original; citation omitted).

Courts have generally also held that a tenant must actually request a particular accommodation, and must link that request to some disability, before a landlord is obligated to provide such an accommodation.  *E.g.*, *Elliott v. QF Circa 37, LLC*, No. 16-cv-0288-BAS-AGS, 2018 WL 2933467, at *7 (S.D. Cal. June 12, 2018) (citing district court decisions and out-of-circuit authority).  "[T]he FHA 'does not require clairvoyance' on the part of the defendant that a request is one for a reasonable accommodation."  *Id.* (quoting *Burgess v. Hous. Auth. of Alameda Cty.*, No. C01-04098 MJJ, 2006 WL 7347315, at *5 (N.D. Cal. Dec. 30, 2006)).

#### 1.   Plaintiffs Sufficiently Allege Requests for Accommodation

Echelon does not dispute that Escamilla was disabled or argue that Plaintiffs failed to

allege that Echelon "knew or should reasonably be expected to know of [Escamilla's] handicap." *See Howard*, 988 F.3d at 1189. Instead, it contends that Plaintiffs have not sufficiently alleged a request for accommodation based on that disability

Plaintiffs sufficiently allege requests for accommodation in at least four instances. First, Plaintiffs allege that Escamilla told Echelon's manager about his health issues in the same December 16, 2022 conversation where he requested more time to resolve the outstanding permit. ECF No. 31 at 6, ¶ 41. Construing plaintiffs' allegations in their favor for the purpose of the present motion, it is reasonable to infer that Echelon should have understood that conversation as a request for accommodation of Escamilla's disability—an implication that would not "require clairvoyance" by Echelon. *Cf. Elliott*, 2018 WL 2933467, at *7. Later, Plaintiffs' counsel sent two letters asking Echelon to rescind its sixty-day notice to vacate, both specifically framed as requests for accommodation of disability. *Id.* at 8–9, ¶¶ 61, 67. Finally, Plaintiffs spoke with Echelon's owner on June 15, 2023 and again requested rescission of the sixty-day notice as an accommodation of disability. *Id.* at 10, ¶ 69.

Echelon also argues that Plaintiffs' requests for accommodation did not put Echelon on notice of any effect that Escamilla's disability had on *Cordero's* ability to resolve the outstanding permit and decal issues. ECF No. 32 at 11. As discussed above, Plaintiffs allege that Escamilla informed Echelon of his disability and requested more time for Plaintiffs to comply. Construing the First Amended Complaint in the light most favorable to Plaintiffs, Echelon might reasonably have inferred that Escamilla's disability imposed additional burdens on Cordero that would interfere with her ability to resolve the permit and decal issues. If Echelon did not understand why Escamilla's health issues prevented both Plaintiffs from coming into compliance more quickly, it could have asked. Although the FHAA does not impose an affirmative duty for a landlord to engage in an interactive process with a tenant who requests accommodation, "a landlord acts in this regard at its own risk." *Howard*, 988 F.3d at 1192; *see Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 895 (7th Cir. 1996) (affirming liability where a landlord testified that the plaintiff's disability did not appear to require a requested accommodation, but failed to ask the plaintiff for more information that would have explained his need for the accommodation).

12

The fact remains that Plaintiffs requested additional time to comply with Echelon's requests. If Echelon unilaterally determined that Escamilla's disability did not require such accommodation without asking Plaintiffs why the accommodation was necessary, it accepted the risk of liability if the accommodation were later shown to have been needed.

Echelon's arguments on this point do not address Plaintiffs' requests to rescind the notice to vacate, at least some of which specifically stated that both Escamilla and Cordero had been unable to comply more quickly due to Escamilla's disability, and which also asserted that eviction would disproportionately harm Escamilla due to his health. *Id.* at 8–10, ¶¶ 61, 67, 69.

The Court is satisfied that Plaintiffs have sufficiently alleged requests for accommodation.

### 2. Plaintiffs Sufficiently Allege Necessity

The Court previously dismissed Plaintiffs' claims because Plaintiffs had not described the process to resolve their permit and decal issue, and thus had not plausibly alleged that Escamilla's disability required additional time to resolve the permit and decal issues. ECF No. 30 at 6–7. Echelon argues that the same defects still warrant dismissal.

Plaintiffs have now presented allegations that obtaining a valid permit required several months of correspondence with an inspector first to determine that the original permit had expired and needed to be replaced, and then to schedule an inspection after a new permit was issued. ECF No. 31 at 6–9, ¶¶ 45–46, 48, 50–53, 57–58, 60, 63–64. Plaintiffs also allege that obtaining a replacement registration decal required repeated inquiries to multiple entities, with one inquiry to HCD going unanswered for several months and HCD's contractor taking more than a month to send the decal after Cordero submitted an order to the right entity. *Id.* at 8, 10 ¶¶ 59, 68.

Echelon argues that "other factors" besides disability led to Plaintiffs' delay, but the factors identified in Echelon's briefs either are potentially consistent with difficulties caused by disability, such as Plaintiffs' failure to recognize that their original permit was never finalized, or potentially go towards the reasonableness of the time Echelon allowed for Plaintiffs to comply, like the fact "that the HCD inspector had a busy schedule." ECF No. 32 at 12–13, ECF No. 36 at 8.

For the purpose of the present Motion to Dismiss, it is reasonable to infer that Escamilla's intensive health issues prevented Plaintiffs from dedicating the necessary attention to overcome

13

administrative hurdles to comply in the time that Echelon allowed for them to do so, and that either additional time to comply or rescission of the sixty-day notice were necessary to grant Plaintiffs equal enjoyment of their tenancy as compared to non-disabled tenants. Echelon may test that proposition through discovery and dispute it on a factual record, but Plaintiffs' allegations sufficiently present a plausible theory of their claim.

Neither party's briefs address whether the presence of a non-disabled cotenant relieves a landlord from its obligation to accommodate a tenant's disability by effectively shifting obligations to the cotenant. Drawing all reasonable inferences in Plaintiffs' favor for the purpose of the present motion, Plaintiffs have sufficiently alleged that Cordero was unavailable to resolve the permit issues due to the combination of her work and caregiving responsibilities that resulted from Escamilla's disability. This order does not reach the question of whether Escamilla's claims, as pursued by his successor in interest, would survive if Cordero (but not Escamilla) reasonably could have resolved the permit issues before Echelon issued the sixty-day notice to vacate.

Echelon also argues that Plaintiffs have not alleged a nexus between Escamilla's disability and Plaintiffs' failure to obtain a replacement decal because Escamilla was not a registered owner of the mobilehome who could have requested that decal, and because Plaintiffs have not explained why their pastor Cooney (who was listed as a registered owner in addition to Cordero) could not have completed that task. ECF No. 32 at 13. As discussed above, Plaintiffs have sufficiently alleged that Escamilla's disability impaired Cordero's ability to obtain the permit. As for Cooney, Plaintiffs have alleged that he did not in fact own the mobilehome even though he appeared on the title, and that Echelon knew that he did not reside at the mobilehome. ECF No. 31 at 3, ¶¶ 15, 17. There is no indication that Echelon or anyone else informed Cooney of the missing decal. Even though Cooney legally *could* have applied for a new decal, it is not clear why he would or should have taken such steps to remedy a deficiency he may not have known to exist regarding a mobilehome that he neither lived in nor owned. Echelon cites no authority suggesting that the mere possibility of a third party resolving an issue on behalf of a disabled plaintiff eliminates the need for reasonable accommodation under the FHAA.

Accordingly, Plaintiffs have alleged sufficient nexus between Escamilla's disability and

the relief that they requested (i.e., additional time to comply and rescission of the sixty-day notice) to proceed on their claim that such relief was necessary to accommodate that disability.

### 3. Plaintiffs Sufficiently Allege the Requested Accommodations Were Available

Two potential accommodations are at issue in this case: extending time for Plaintiffs to resolve the permit and decal issues before Echelon issued the sixty-day notice to vacate, and rescinding that notice after Plaintiffs obtained the new permit and decal. Echelon contends that those accommodations would not have been reasonable.

The Court previously held that, as a matter of law, rescission of the notice to vacate could potentially be a reasonable accommodation. ECF No. 30 at 8 (citing *Radecki v. Joura*, 114 F.3d 115, 116 (8th Cir. 1997); *McAlister v. Essex Prop. Tr.*, 504 F. Supp. 2d 903, 906 (C.D. Cal. 2007); *Douglas v. Kriegsfeld Corp.*, 884 A.2d 1109, 1121 (D.C. 2005)). Echelon acknowledges that rescission of such a notice might be reasonable under some circumstances. ECF No. 32 at 14. Echelon argues that rescission was not reasonable under the circumstances of this case, where Echelon had already allowed Plaintiffs several months to obtain the new permit and decal before issuing the notice to vacate. *Id.* That sort of "highly fact-specific" inquiry is generally not appropriate for resolution on the pleadings. *McGary v. City of Portland*, 386 F.3d 1259, 1264 (9th Cir. 2004) (citation omitted),

"Ordinarily, an accommodation is reasonable under the FHAA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1157 (9th Cir. 2003) (citation and internal quotation marks omitted). Echelon has not argued that Plaintiffs' requested accommodations would fundamentally alter any "program," and it is not clear from the allegations before the Court that either allowing more time or rescinding the sixty-day notice to vacate would have imposed any meaningful burden on Echelon. Echelon remains free to argue on a factual record that either a further extension of time before issuing the sixty-day notice, or rescission of that notice after it was issued, would have been unreasonable. Plaintiffs' allegations as to this issue, however, are sufficient to survive Echelon's Motion to Dismiss.

15

Echelon also argues that it needed to terminate Plaintiffs' tenancy based on Plaintiffs' permit and decal deficiencies to avoid risks to Echelon's license to operate under state law. ECF No. 32 at 14–15; ECF No. 36 at 9–10. The Ninth Circuit has held that a plaintiff could state an FHAA claim against a local government that refused to allow him an extension to comply with a nuisance ordinance based on his illness. *McGary*, 386 F.3d at 1264. If the FHAA can require governments to grant extensions for compliance with the law, it follows that landlords might also be required to grant similar extensions before evicting a tenant for noncompliance with the law in at least some circumstances—particularly where, as here, there is no indication that the landlord faced any actual enforcement action or other imminent legal consequences for the tenant's noncompliance. *See* ECF No. 31 at 7–8, ¶ 55 (alleging that HCD did not issue a notice of violation to either Plaintiffs or Echelon). As Echelon acknowledges, determining the amount of time to allow Plaintiffs to come into compliance required a "balancing act." ECF No. 32 at 14–15. Whether the time that Echelon allowed before issuing the notice to vacate was reasonable in light of the parties' obligations under state law is a fact-specific question better addressed on a factual record. *See McGary*, 386 F.3d at 1264. Moreover, Echelon has not explained whether or how any risk to its license remained after Plaintiffs obtained their new permit and decal, such that rescinding the notice to vacate would be unreasonable.

Taking Plaintiffs' factual allegations as true and drawing reasonable inferences in Plaintiffs' favor, Plaintiffs have plausibly alleged that both an extension of time to comply, and rescission of the notice to vacate after they complied, would have been reasonable accommodations of Escamilla's disability.

\* \* \*

Echelon has not identified any defect in Plaintiffs' FHAA claim that requires dismissal. Echelon's Motion to Dismiss is therefore DENIED as to that claim.

### D. Plaintiffs' FEHA Claim

Echelon moves to dismiss Plaintiffs' FEHA claim for the same substantive reasons as the FHAA claim, and for lack of supplemental jurisdiction if the FHAA claim is dismissed. Those potential grounds for dismissal of the FEHA claim fall away in light of the Court's conclusion that

16

the FHAA claim may proceed.

Echelon also asks the Court to decline to exercise supplemental jurisdiction over Plaintiffs' FEHA claim even if the FHAA claim survives, on the premise that issues of state law predominate because "Plaintiffs' tenancy in the Park is governed by California's Mobilehome Residency Law, Cal. Civ. Code § 798.10 *et seq.*," and because the Sonoma County Superior Court has already resolved a separate dispute between the parties regarding Echelon overcharging Plaintiffs' rent and would be the forum for an unlawful detainer action should Echelon proceed with eviction. ECF No. 32 at 15–16.

Under 28 U.S.C. § 1367(c), a district court may "decline supplemental jurisdiction over a claim" if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). A district court's discretion to decline to exercise supplemental jurisdiction "is informed by the Gibbs values 'of economy, convenience, fairness, and comity.'" *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, (1966)).

Echelon has not argued that any state law issue in this case is sufficiently novel or complex to warrant declining supplemental jurisdiction under § 1367(c)(1). As the Court previously held, and Echelon does not dispute, the relevant "provisions of FEHA involve substantially the same rights as the FHAA provisions and are subject to the same analysis." ECF No. 30 at 10 (cleaned up). Requiring parallel proceedings in different courts for Plaintiffs' largely identical state and federal claims would ensure inefficiency and invite inconsistent outcomes. This Court is capable of resolving the issues Echelon identifies regarding Echelon's obligations under state law, which appear to be equally relevant to the FHAA claim that would proceed in this Court regardless of whether the Court exercises supplemental jurisdiction over the FEHA claim. *See, e.g.*, *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 261 (E.D.N.Y. 2010) (noting in the context of a

17

motion to transfer venue that "federal courts are deemed capable of applying the substantive law of other states").

The previous case regarding overcharged rent seems to be of no consequence to this case now that Plaintiffs' retaliation claims have been dismissed. No unlawful detainer action has yet been filed. Even if there were a connection between this case and any pending litigation in state court, declining supplemental jurisdiction over Plaintiffs' FEHA claim would serve little purpose when Plaintiffs' substantially similar FHAA claim remains pending in this Court.

Echelon's request that the Court decline supplemental jurisdiction is therefore DENIED.

## IV.  CONCLUSION

For the reasons discussed above, Cordero's Motion to substitute herself as successor in interest for Escamilla is GRANTED, and Echelon's Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: February 28, 2024

LISA J. CISNEROS
United States Magistrate Judge